[Civ. No. 4260. First Appellate District, Division One.—November 29, 1922.]

## GEORGE A. APPLEGARTH, Respondent, v. S. S. WEINTRAUB, Appellant.

[1] SALES — CHARACTER AND VALUE OF LIBERTY BOND — MISTAKE — FRAUD—RESCISSION.—Where the seller of an automobile accepts a Liberty Loan bond in part payment upon the mistaken appraisement of a bank clerk and in the belief that it is a "temporary" bond, whereas in fact it is a "permanent" bond with all coupons detached, and the buyer, although he knows the character and value of the bond and knows the clerk has made a mistake with reference thereto, fails to disclose those facts, the conduct of the buyer vitiates the transaction and no title passes to him under the bill of sale executed by the seller, where the latter promptly rescinds.

[2] JUDGMENTS—CLAIM AND DELIVERY—APPEAL—CONSTRUCTION. — On appeal, in an action in claim and delivery, a judgment for possession of the property, or, in case delivery could not be had, for the value thereof, the amount of which is fixed, and for a specified sum as damages for detention, will be construed to mean that if the defendant returns the property plaintiff may have judgment for the amount specified as damages for detention and if defendant fails to return the property plaintiff may have the value thereof at the time of the taking.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hiram W. Johnson, Jr., and Carl E. Day for Appellant.

Keyes & Erskine for Respondent.

ST. SURE, J., *pro tem.*—Plaintiff advertised his Dodge sedan automobile for sale for the sum of $750. Defendant sought to purchase, offering a fourth Liberty Loan bond of the par value of $500 on account of the price. Plaintiff not knowing what the bond was worth, both parties went to the Mercantile Trust Company, where plaintiff did his banking. The bond was exhibited to Mr. Ahnfeld, clerk in the bond department, and in the presence of plaintiff and defendant Mr. Ahnfeld stated that the bond was a "temporary" bond, worth about $480. Defendant knew at the time that the clerk had made a mistake when he stated the bond was a "temporary" bond. Defendant knew the bond was a "permanent" bond, as he had previously detached from it some thirty-four coupons and had used them in another transaction. Defendant knew that the bond, with coupons detached, was worth about $200 instead of $480. But he made no disclosures. The parties then went to plaintiff's office where the deal was closed. Defendant delivered to plaintiff the Liberty bond and a certified check for $240, and plaintiff delivered the automobile to the defendant, together with a bill of sale which recited that the consideration for the sale was "Liberty Bond No. B 00096672 of the Fourth Liberty Loan, and of the demnomination of $500, and from which all interest coupons have been cut off and which does not

mature until October 15, 1938, and the sum of $240, gold coin,'' etc. Next morning plaintiff went to the bank for the purpose of cashing the bond and was then informed that a mistake had been made; that the bond was not a ''temporary'' bond, as had been supposed, but that it was a ''permanent'' bond with all the semi-annual coupons detached. Plaintiff and Mr. Ahnfeld went immediately to the residence of defendant, demanded the detached coupons or the return of the automobile, and offered to return the bond and the certified check. Both plaintiff and Mr. Ahnfeld testified that at this interview defendant said that he knew all of the time that a mistake had been made about the bond, but that he considered that he had done a good stroke of business, and he refused to accept a return of the bond and certified check and return the automobile to plaintiff, or to make good the value of the detached coupons. A policeman was then called and all the parties went down to the Mercantile Trust Company and discussed the matter with Mr. W. B. Bakewell, vice-president of the company. Mr. Bakewell in testifying said in part:

''I then suggested that if he (defendant) did not want to give back the car that he give Mr. Applegarth the coupons which had been detached from the bond. He stated he could not do that because he had used them in another deal . . . and I asked him if he thought that was an honorable thing to do and he said he thought it was good business. . . . I told him I thought he ought to be ashamed of himself for taking advantage of Mr. Applegarth.''

From the testimony it appears that defendant claimed for the first time at the trial that he had agreed to purchase the automobile for $440 and that plaintiff was accepting the bond at $200, and that plaintiff knew it was a permanent bond.

An action in claim and delivery was commenced the day following the transfer of the automobile, and the sheriff was requisitioned to take the property. Defendant filed a bond and secured a return of possession. The action was tried by the court without a jury. Judgment was given and entered for possession of the automobile, or, in case delivery could not be had, for the value thereof, which was fixed at the sum of $650, and for $350 damages for detention, and costs of suit.

Findings usual in an action of claim and delivery were made, to the effect that plaintiff is the owner of the automobile; that it was unlawfully taken and detained, and that there were demand for return and refusal thereof.

[1] The court further found: "That it is not true that on the 21st day of December, 1921, for a good and valuable or good or valuable consideration or for any consideration paid by the defendant to the plaintiff or at all, said plaintiff sold and transferred or sold or transferred said automobile to the defendant herein; that on the last-mentioned date the plaintiff agreed to sell to the defendant and the defendant agreed to buy from the plaintiff the said Dodge car for the sum of $750 payable as follows: $240 in cash and the balance by a United States fourth 4¼% Liberty bond. Thereupon the said plaintiff signed and gave to the said defendant a bill of sale of said automobile and delivered possession of said automobile to said defendant and the said defendant gave the said plaintiff the said sum of $240 and a permanent fourth Liberty Loan bond maturing 1938, bearing interest at 4¼% with all the interest coupons detached; that plaintiff accepted the said permanent bond believing that it was a temporary bond and not knowing that it was the permanent bond with all the coupons detached; that the said defendant knew at all times that the said plaintiff was making this mistake and said plaintiff gave the said bill of sale and the said automobile to the defendant solely on account of this mistake and would not have done so except for said mistake.

"That on the 22nd day of December, 1921, and as soon as plaintiff discovered the said mistake he notified the defendant thereof, tendered and offered to return to the said defendant the said sum of $240 and the said permanent bond with the coupons detached and demanded the return of the said automobile; that said defendant refused and still refuses to return the said automobile to the plaintiff."

Defendant appeals upon the judgment-roll and a transcript of the testimony. He asks for a reversal of the judgment upon the following grounds:

"1. The bill of sale itself positively shows that plaintiff was to get a Liberty Bond, but was not to get any coupons.

"2. Title passed to defendant under the bill of sale, and

this action of replevin cannot be maintained in the absence of a showing of fraud.

"3. There is a total absence of any showing of fraud. . . .

"4. The damages allowed for depreciation was outside the issues and unauthorized."

(1) The description of the bond given in the bill of sale fits either a "temporary" or a "permanent" bond. A photograph of the bond involved in the litigation is attached to the record as an exhibit. An inspection of it shows how easily one might be mistaken as to its classification. Indeed, the evidence is undisputed that the bank clerk made such a mistake.

(2, 3) Accepting the findings of the trial court as true and fully supported by the evidence, we are unable to agree with the contention of defendant that there was a "total absence of any showing of fraud." In its findings the trial court describes the conduct of defendant and says, in effect, that such conduct induced plaintiff to give the bill of sale. The bond transaction is called a mistake. It seems to us immaterial how the transaction is labeled. The suppression of facts by the defendant at the time the Liberty bond was examined and appraised at the bank misled plaintiff to his injury. Inherent in every business transaction should be that sincerity which insures fair dealing between parties. Defendant's conduct in the premises was the very essence of deceit and vitiated the sale. Plaintiff promptly rescinded. No title passed to the vendee through the bill of sale under such circumstances. (*Wendling Lumber Co.* v. *Glenwood Lumber Co.*, 153 Cal. 411 [95 Pac. 1029].)

[2] (4) We adopt the construction given the judgment by plaintiff. It is stated in his brief as follows:

"The judgment under consideration means that if defendant returns the automobile plaintiff may have judgment for $350.00 damages for detention and if defendant fails to return the automobile plaintiff may have the value thereof at the time of the taking, to wit, $650.00."

And we are of opinion that such a construction is sustained by the decision of this court in the case of *Morris* v. *Allen,* 17 Cal. App. 684 [121 Pac. 690].

The judgment is affirmed.

Tyler, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 25, 1923.

All the Justices concurred.